IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE KERN | : | |
| Plaintiff | : | |
| | : | |
| v. | : | 3:CV-08-1601 |
| | : | (JUDGE VANASKIE) |
| SCHUYLKILL INTERMEDIATE UNIT 29, | : | |
| GERALD ACHENBACH, ED.D. | : | |
| Defendants | : | |

| | |
|---|---|
| KAREN THARP | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| SCHUYLKILL INTERMEDIATE UNIT 29, | : |
| GERALD ACHENBACH, ED.D. | : |
| Defendants | : |

MEMORANDUM

Plaintiffs, Karen Tharp and Suzanne Kern, brought suits against Defendants, Schuylkill Intermediate Unit 29 ("I.U.") and Gerald Achenbach, asserting eight claims for relief in connection with their separation from employment with the I.U.[1] (Tharp Dkt. 5; Kern Dkt. 5.) Subsequently, Defendants moved to dismiss Counts I through III and V through VIII of the amended complaints filed separately on behalf of Tharp and Kern. (Tharp Dkt. 6; Kern Dkt. 6.) For the following reasons, Defendants' motion will be granted in part and denied in part.

---

[1] By Order dated November 5, 2008 (Dkt. 13), this Court consolidated Ms. Tharp's action (Case No. 3:08-CV-1602) with Ms. Kern's lawsuit (Case No. 3:08-CV-1601).

## I. BACKGROUND

On or about December 3, 2001, Ms. Tharp began working for the I.U. as a Special Education Instructor. Around August 1979, Ms. Kern began working for the I.U. as a Marketing Instructor. On June 1, 2007, Plaintiffs and their fellow employees were playing with squirt guns in the school halls. On June 28, 2007, Plaintiffs attended a meeting with Executive Director Gerald Achenbach to discuss the squirt gun incident. At the meeting, Kern and Tharp were compared to the Columbine High School shooters. Specifically, Defendants showed Plaintiffs a power-point presentation, which juxtaposed a school surveillance photograph of them holding squirt guns next to a picture of the shooters from Columbine High School.

On July 23, 2007, Kern received a letter informing her that she interrupted the educational process, set a bad example for the students, that the images on the monitors could have been misinterpreted as a threat to students or staff, and the event was insensitive to the tragedy at Virginia Tech which transpired earlier that same year. On July 25, 2007, Kern alleges that she was forced to retire from her position because of the treatment, reactivation, and exacerbation of her former disability, Post Traumatic Stress Disorder.

On August 14, 2007, Tharp received a similar letter, which additionally explained that she was suspended for three days: August 22, August 23, and August 27, 2007. Tharp claims that she was mistreated, discriminated against, and "constructively discharged."

Plaintiffs separately filed dual administrative claims of discrimination with the Equal

2

Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), on or about December 4, 2007. (Dkt. 11, Exhbt. "A".)[2] Kern presented both disability and gender discrimination claims to the EEOC, while Tharp asserted only a claim of gender discrimination. On or about January 7, 2008, the I.U. received from the EEOC "Notices of Charge of Discrimination" for each Plaintiff, but the notices failed to specify the precise statutory basis for the discrimination claims. (Dkt. 7, Exhbt. "B".) On October 2, 2008, counsel for Plaintiffs sent letters on their behalf to the EEOC requesting a notice of right-to-sue (Tharp Dkt. 5, at 21; Kern Dkt. 5, at 21), but no right-to-sue letter was ever issued.

Plaintiffs initiated these actions in the Court of Common Pleas of Schuylkill County by way of Writs of Summons on June 30, 2008. On August 26, 2008, Defendants filed Notices of Removal to this Court. On October 2, 2008, Plaintiffs' filed amended complaints. Defendants' moved to dismiss the amended complaints on October 6, 2008. (Kern Dkts. 6, 27.)

Tharp's amended complaint contains seven counts against the I.U. (Counts I-VII), and three Counts against Achenbach (Counts VI-VIII). Kern's amended complaint contains seven counts against the I.U. (Counts I-VII), and two counts against Achenbach (Counts II and VIII).

Plaintiffs present a number of common claims. First, each alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., contending that each

---

[2] The purported administrative complaints are not attached to Plaintiffs' pleadings, but are instead attached to their brief in opposition to the motions to dismiss.

Plaintiff has disabilities that impose substantial limitations on one or more major life activity, each Plaintiff can perform the essential functions of their job with reasonable accommodations, and the I.U. discriminated against each Plaintiff because of her disability. Next, each Plaintiff asserts gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[3] Each Plaintiff also asserts a right to relief against the I.U. under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq., with both Plaintiffs asserting that Achenbach is liable individually for having aided and abetted the alleged discriminatory conduct. Plaintiffs also present procedural due process claims, seeking relief under 42 U.S.C. § 1983. Kern and Tharp both assert defamation causes of action, Tharp against the I.U. and Achenbach, and Kern solely against the I.U., stemming from the meeting where their pictures with water guns were compared with the Columbine High School shooters. (Tharp Dkt. 5, at 15; Kern Dkt. 5, at 16.) Finally, Tharp asserts a claim for intentional infliction of emotional distress against the I.U. and Achenbach, and Kern brings the same action against the I.U. only.

---

[3] In Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, counsel recognized that in "the Suzanne Kern [Amended] Complaint, the allegations of individual Title VII liability on part of Defendant Achenbach were misplaced, and therefore Defendants are correct in their argument that any such individual liability under Title VII against Achenbach must be dismissed." (Ptfs.' Memo. Law Opp'n Defs.' Mot. Dismiss, Dkt. 11, at 15.) See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (holding "Congress did not intend to hold individual employees liable under Title VII"). Accordingly, Defendant Achenbach will be dismissed from Count II of Kern's Amended Complaint.

II.    DISCUSSION

A. Standard of Review

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the cause of action." Id.

The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989).

The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As a result of Twombly, plaintiffs were required to nudge their claims "across the line from conceivable to plausible." Id. at 570. To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient "to raise a right to relief above a speculative level." Id. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). As such, courts may dismiss a complaint if it fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 550 U.S. at 562 (quotation and citation omitted); see also Phillips, 515 F.3d at 234 (in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).

"In general, a district court ruling on a motion to dismiss (or for judgment on the pleadings) may not consider matters outside the pleadings." In re Pressure Sensitive Labelstock Antitrust Litig., 566 F.Supp.2d 363, 375 (M.D. Pa. 2008) (citing In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997)). "[A]n exception to the general rule is that a

'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' " In re Burlington Coat Factory, 114 F.3d at 1410 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996)). A document is integral to the complaint when the allegations in the complaint are based on the document. Id.

   B.   Exhaustion of Administrative Remedies: ADA (Count I), Title VII (Count II), and PHRA (Count III) Claims Against the I.U.

Initially, Defendants' sought to dismiss Plaintiffs' claims under the ADA, Title VII, and PHRA on the ground that Plaintiffs had failed to exhaust administrative remedies. (Defs.' Br. Supp. Mot. Dismiss Pltf's. Am. Compl., Tharp Dkt. 7, at 5-7.) Plaintiffs' opposition brief included copies of administrative charges of discrimination dated December 4, 2007. In Defendants' Reply to Plaintiffs' Brief in Opposition to the Motion to Dismiss, Defendants requested that, pursuant to Fed. R. Civ. P. 12(e), the Court require Plaintiffs to more definitively plead that administrative exhaustion was accomplished. (Defs.' Reply Pltfs.' Br. Opp'n Mot. Dismiss, Dkt. 17, at 2-5.)

Under the ADA, Title VII, and PHRA, "a plaintiff must exhaust all administrative remedies before seeking judicial relief . . . ." Dubose v. District 1199C, 105 F.Supp.2d 403, 410 (E.D. Pa. 2000). The "exhaustion requirement is designed to provide sufficient notice to the defendant concerning the charges and obtain voluntary compliance without resort to litigation." Fucci v. Graduate Hosp., 969 F.Supp. 310, 316 (E.D. Pa. 1997) (citation omitted).

Under Title VII, it "is established doctrine that a charge must be filed against a party with the EEOC before an action in the district court can be commenced." Glus v. G. C. Murphy Co., 562 D.2d 880, 885 (3d Cir. 1977) (citations omitted). "An ADA plaintiff must follow the same administrative procedures set forth in Title VII, 42 U.S.C. § 2000e-5" in order to bring suit. Dubose, 105 F.Supp.2d at 410 (citing Churchill v. Star Enter., 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. § 12117(a)). When, as appears to be the case here, a plaintiff files with the EEOC and indicates that plaintiff wishes to cross-file with the PHRC, the worksharing agreement between the two agencies governs the processing of a party's claim. Woodson v. Scott Paper Co., 109 F.3d 913, 926 n.12 (3d Cir. 1997). The Third Circuit Court of Appeals has stated:

> Under the worksharing agreement, a claim that is filed first with the EEOC can be processed by the EEOC, without being investigated as an initial matter by the PHRC. Through this worksharing agreement, therefore, Pennsylvania has waived its statutory right to initially process discrimination claims, and hence this agreement operates to "terminate" the PHRC proceedings with respect to those complaints that are filed first with the EEOC. In other words, the worksharing agreement allows a plaintiff to proceed in court under Title VII without first filing with the PHRC.

Woodson, 109 F.3d at 926 (internal citations omitted).

Under Title VII, a charge of employment discrimination must be filed with the EEOC within 180 days of the last claimed act of discrimination. 42 U.S.C. § 20002-5(e)(1); Oshiver v. Levin, 38 F.3d 1380, 1385 (3d Cir. 1994). While the receipt "of a right-to-sue letter is indeed a statutory prerequisite to filing suit under Title VII[,] when faced with a situation where the EEOC

8

has failed to issue the letter even though the 180-day deadline has expired, courts have allowed a plaintiff to maintain a Title VII action provided that she can show that she is entitled to the right-to-sue letter and has requested it." Johnson-Medland v. Bethana, No. 96-4258,1996 WL 612467, *6 (E.D. Pa. 1996) (citing Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518, 1526 (11th Cir.1983); Lynch v. Borough of Ambler, No. 94-6401, 1995 WL 113290, * 5 (E.D. Pa.1995); Johnson v. Duval County Teachers Credit Union, 507 F.Supp. 307, 309 (M.D. Fla.1980); Stapper v. Texas Dept. of Human Resources, 470 F.Supp. 242, 245-46 (W.D. Tex.1979)). Otherwise, parties would be required to file a suit for a writ of mandamus "compelling the EEOC to issue the letter [which would] be unduly cumbersome." Id.

In this case, it appears that Plaintiffs dually-filed their charges of discrimination with the EEOC and PHRC on or about December 4, 2007, which is well within the 180 day period of alleged discrimination, as Kern alleges she was forced to retire on July 27, 2007, and Tharp was suspended for three days beginning August 22, 2007, and then "constructively discharged." Plaintiffs' counsel requested a right-to-sue letter for both of his clients on October 8, 2008, yet never received any response from the EEOC. Thus, both Plaintiffs have alleged an entitlement to right-to-sue letters and a failure of the EEOC to issue the letters.

The amended complaints allege in conclusory fashion that administrative complaints of discrimination were pursued, but provide no details as to the exhaustion effort, other than to refer to the letters seeking issuance of right-to-sue letters. Plaintiffs provided copies of what

9

appear to be their timely-filed charges of discrimination as attachments to their brief in opposition to the motion to dismiss. Defendants seek a more specific pleading of the dates when charges of discrimination were filed, questioning the assertion that administrative remedies were indeed exhausted because they allegedly did not receive the charging documents. At this stage, however, Plaintiffs have satisfied their pleading burden. Details pertaining to the exhaustion effort are more properly the subject of discovery.

As noted above, Kern presented both disability and gender discrimination claims to the EEOC. Accordingly, the motion assailing the justiciability of her disability and gender discrimination claims asserted in the first three Counts of her amended complaint will be denied.

Tharp's dual charge with the EEOC and PHRC failed to present a disability discrimination claim. In this regard, unlike Kern, she did not check the box signifying that she claimed discrimination based upon disability. She placed an x only in the box for sex discrimination. Moreover, there is no averment in the body of her Charge of Discrimination that would raise an inference of disability discrimination. "Courts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted).

Here, Tharp's charge of discrimination[4] is based only on sex, and states that Plaintiff Tharp "believes that in violation of Title VII of the Civil Rights Act of 1964 [the I.U.] discriminated against [Tharp] because she is female." (Dkt. 11, Tharp Exhbt. "B", at 1-2.) Nowhere in Tharp's charge is there any mention of disabilities, severe distress syndrome, or anything of the like, which "began following the June 28, 2007 meeting[,]" approximately six months before her charge was filed. (Tharp Am. Compl., Dkt. 5, at 4.) Also, there is no nexus between the Title VII charge and the ADA claim that would give the I.U. notice to defend the ADA claim. Accordingly, Tharp's Count I, claim seeking relief under the ADA, will be dismissed. Similarly, for the reasons stated above, Tharp may only pursue a claim based upon sex discrimination in her Count III PHRA claim.[5] See Neibauer v. Philadelphia College of Pharmacy and Science, No. 92-CV-1993, 1992 WL 151321, * 2 (E.D. Pa. 1992) (dismissing additional federal court claims of religion and national origin discrimination not contained in charge because they did not arise out of new acts nor were they like or related to original charges); Miller-Turner v. Mellon Bank, N.A., No. 94-5409, 1995 WL 298931, *4 (E.D. Pa. 1995) (granting summary judgment against Plaintiff on federal court claims of gender, color and national origin because

---

[4] The Court may consider Tharp's charge of discrimination, which Plaintiffs' counsel attached as Exhibit "B" to their Memorandum in Opposition to Defendants' Motion to Dismiss, because it is an integral document. See In re Burlington Coat Factory, 114 F.3d at 1410.

[5] Plaintiffs' Count III claims in their amended complaints are identical. Both aver that the I.U. violated the "Pennsylvania Human Relations Act" and the PHRA "prohibits discrimination based upon sex, national origin, disability, and age." (Tharp Am. Compl., Dkt. 5, at 10 ¶¶ 55-56; Kern Am. Compl., Dkt. 5, at 11 ¶¶ 60-61.)

defendant did not charge such discrimination to EEOC).

C.    Liberty Interest in Employment (Count V)

Defendants move to dismiss Count V of each of the Plaintiffs' amended complaints, which allege that the I.U. deprived Tharp and Kern of a "liberty interest in employment." Specifically, the Defendants argue that Plaintiffs failed to claim that Defendants publically disseminated any falsehood or stigmatizing information about Plaintiffs.  (Defs.' Br. Supp. Mot. Dismiss, Tharp Dkt. 7, at 8-9; Kern Dkt. 7, at 9-10.)  Plaintiffs counter that this case involves fraudulent, stigmatizing conduct harming Plaintiffs' employment rights and impairing their future employment prospects.  (Pltfs.' Memo. Law Opp'n Defs.' Mot. Dismiss, Dkt. 11, at 4-5.)

Under the Fourteenth Amendment, the words "'liberty' and 'property' . . . do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law."  Paul v. Davis, 424 U.S. 693, 701 (1976).  Our Court of Appeals has clarified that  "reputation alone is not an interest protected by the Due Process Clause."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original) (quoting Versage v. Twp. of Clinton, New Jersey, 984 F.2d 1359, 1371 (3d Cir. 1993)) (citation omitted).  "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  Id. (citing Paul, 424 U.S. at 701) (citations omitted).  "An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against

[the individual] that might seriously damage his standing and associations in the community . . . or (2) 'impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities.'" <u>Robb</u>, 733 at 293 (quoting <u>Roth</u>, 408 U.S. at 573).

In the public employment context, "the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." <u>Hill</u>, 455 F.3d at 236 (quoting <u>Codd v. Velger</u>, 429 U.S. 624, 628 (1977)). Our Court of Appeals in <u>Hill</u> explained:

> The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing.
>
> To satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly and (2) were false.

<u>Id.</u> at 236 (internal citations omitted). A public employee defamed in the course of being terminated or constructively discharged meets the "stigma-plus" standard even if she does not have a property interest in public employment. <u>Id.</u> at 238 "Moreover, a plaintiff must plead that the allegedly stigmatizing information was 'published' or otherwise disseminated by his government employer to the public." <u>Chabal v. Reagan</u>, 841 F.2d 1216, 1223 (3d Cir. 1988) (citing <u>Bishop v. Wood</u>, 426 U.S. 341, 348 (1988)).

Plaintiffs have alleged that the I.U. caused the public dissemination of "false and outrageous accusations" that "lead Plaintiff[s'] co-workers and other members of the community to believe that Plaintiff[s] had in some fashion been involved in some sort of terrorist incident." (Tharp Am. Compl., Dkt. 5, at 13 ¶ 71; Kern Am. Compl., Dkt. 5, at 14 ¶ 76.) Thus, at this stage of the proceedings, Plaintiffs have nudged their claims "across the line from conceivable to plausible." Twombly, 550 U.S. 570. Accordingly, the Defendants' motion to dismiss Count V of the amended complaints will be denied.[6]

D.     The Pennsylvania Political Subdivision Tort Claims Act (Counts VI and VII)

Defendants contend that Plaintiffs claims for defamation (Count VI) and intentional infliction of emotional distress (Count VII) should be dismissed as against the I.U. because the I.U. is immune under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, et seq., ("PTSCA"). Under this legislation, municipal defendants are granted broad

_____

[6] Additionally, the Court notes that Plaintiffs allege they did not have a chance to respond to the allegations made against them, nor were they given the opportunity to refute these claims through the appeals process in the collective bargaining agreement. (Tharp Dkt. 5, at 14-15; Kern Dkt. 5, at 13-14.) It is unclear whether Plaintiffs were required to allege that they had timely requested a name-clearing hearing, and that request was denied. Defendants cite Puchalski v. School District of Springfield, 161 F.Supp.2d 395 (E.D. Pa. 2001) (ruling on motion for summary judgment), and Codd v. Velger, 429 U.S. 624 (1977) (per curiam) (appeal from bench trial) for this proposition. (Tharp Dkt. 7, at 9 n.3; Kern Dkt. 7, at 10 n.3.) Unlike Codd, Plaintiffs in this case "challenge the substantial truth of the material in question" i.e., the alleged juxtaposition of Plaintiffs' picture with the Columbine High School shooters' picture suggesting that they were involved in a terrorist incident. Furthermore, the Court is not privy as to what procedures the collective bargaining agreement provides. Thus, this aspect of Defendants' motion to dismiss cannot be adjudicated at this time.

14

immunity against intentional conduct suits.  See Weaver v. Franklin County, 918 A.2d 194, 200 (Pa. Commw. Ct. 2007) (dismissing intentional tort claims).  Section 1841 broadly proclaims that "no local agency shall be liable for any damages by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S.A. § 8541.  A local agency is defined as a "government unit other than the Commonwealth government.  The term includes, but is not limited to, an intermediate unit . . . ."  Id. at § 8501.  It is thus clear that the I.U. is immune from liability on Plaintiffs' intentional tort claims.  See Pribula v. Wyoming Area Sch. Dist., No. 3:06-CV-2039, 2007 WL 2065830, *4-5 (M.D. Pa. 2007).  Accordingly, Plaintiffs' state law intentional tort claims (Counts VI and VII) will be dismissed as against the I.U.  As Kern brought Counts VI and VII solely against the I.U., those Counts will be dismissed in their entirety.

     E.     Doctrine of High Public Official Immunity (Counts VI and VII)

Defendant Achenbach has raised the defense of "high public official" immunity. "Pennsylvania common law recognizes the doctrine of absolute immunity for 'high public officials.'" Zugarek v. Southern Tioga Sch. Dist., 214 F.Supp.2d 468, 479 (M.D. Pa. 2002) (quoting Smith v. Sch. Dist. of Philadelphia, 112 F.Supp.2d 417, 425 (E.D. Pa. 2000)).  At first, this concept was devised in the context of defamation suits "based on statements from officials in the course of their official duties and within the scope of their authority." Id. (citing Smith, 214 F.Supp.2d at 479).  The doctrine has been spread to other tort actions, including retaliatory discharge and intentional infliction of emotional distress.  Id. (citations omitted).

15

"An official's status as a high public official for purposes of absolute immunity is determined on a case-by-case basis, and depends on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Id. (citing Kelleher v. City of Reading, No. 01-3386, 2001 WL 1132401, *4 (E.D. Pa. 2001)). School Board members and superintendents qualify as high public officials. Id. (citations omitted). As high public officials, "they are absolutely immune from state law civil liability even when willful misconduct is alleged." Pribula, 2007 WL at *5 (citing Linde v. Mollan, 677 A.2d 1194, 1195-96 (Pa. 1996)) (affirming dismissal of libel and slander claims on grounds of immunity under absolute privilege afforded to high public officials even when conduct was willful).

Under Pennsylvania law, an executive director is appointed by each intermediate unit board of directors, and shall hold a "commission issued by the Superintendent of Public Instruction, in accordance with regulations adopted by the State Board of Education." 24 P.S. § 9-963(b). The powers and duties of an executive director include:

> (1) To administer the intermediate unit program of services.
> (2) To appoint professional staff subject to the approval of the intermediate unit board of directors.
> (3) To employ nonprofessional staff in accordance with employment policies of the intermediate unit board of directors.
> (4) To prepare the budget for adoption by the intermediate unit board of directors.
> (5) To direct expenditures of funds within the budget or other authorizations of the intermediate unit board of directors.
> (6) To appoint such advisory groups as will assist the staff in providing programs of services for school districts.
> (7) To provide the Superintendent of Public Instruction with

16

> information, reports and services.
> (8) To perform such other duties as may be required by the
> intermediate unit board of directors and the regulations of the State
> Board of Education.

24 P.S. § 9-965. Thus, executive directors, such as Achenbach, perform the equivalent function

of school district superintendents. Like a superintendent in a school district, the executive director

carries out and effectuates policy within an I.U. subject to the approval of the board of directors.

Accordingly, Achenbach qualifies for high government immunity. Indeed, the Pennsylvania

Commonwealth Court has held that "there is no question" that the executive director of an

Intermediate Unit is a "high public official." See AAR v. Ferrari, 898 A.2d 55, 60 (Pa. Commw. Ct.

2006). Accordingly, the intentional tort claims asserted against him in Counts VI and VII of

Tharp's amended complaint will be dismissed, and those Counts will be dismissed in their entirety.

> G.    Aiding and Abetting Discriminatory Conduct in Violation of PHRA
>        (Count VIII)

Plaintiffs bring actions against Achenbach for aiding and abetting discriminatory actions

taken against Plaintiffs. (Tharp Am. Compl., Dkt. 5, at 18; Kern Am. Compl. Dkt. 5, at 19.)

Defendant Achenbach counters that Plaintiffs have failed to state a claim upon which relief can be

granted because Plaintiff was not a direct supervisor of Tharp or Kern, and Plaintiffs only allege

that Achenbach was involved in direct incidents of illegal discriminatory conduct.[7] (Tharp Dkt. 7,

---

[7] Whether Plaintiffs adequately exhausted administrative remedies insofar as a claim of
individual liability under the PHRA is concerned is not properly before the Court at this time. It
may be, however, that either or both Plaintiffs cannot satisfy the exhaustion requirement as to

at 17; Kern Dkt. 14, at 14.)

Under the PHRA, it is unlawful for a any person to compel, coerce, incite, aid, or abet a violation of the Act. 43 Pa.C.S.A. § 955(e). An "individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." <u>Davis v. Levy</u>, 20 F.Supp.2d 885, 887 (E.D. Pa. 1998); <u>see</u> <u>also</u> <u>Dicci v. Pennsylvania</u>, 91 F.3d 542, 552-53 (3d Cir. 1996).

At this stage of the proceedings, and in light of the fact that the Court must view the amended complaints drawing reasonable inferences in favor of Plaintiffs, Tharp and Kern have sufficiently pled a cause of action under 43 P.S. § 955(e). For example, Plaintiffs claim that "Defendant knew that he did not have a legitimate, non-discriminatory reason to take the aforementioned actions against Plaintiff[s]" and he acted intentionally. (Tharp Am. Compl., Dkt. 5, at 19 ¶¶ 106-07; Kern Am. Compl., Dkt. 5, at 19-20 ¶¶ 110-11.) It is fair to infer that Achenbach was not acting for personal reasons, but was instead aiding and abetting the I.U. in taking action Plaintiffs claim to be discriminatory. Accordingly, Defendants' motion to dismiss count VIII will be denied.[8]

_____

claims of individual liability under the PHRA.

[8] Finally, the Court notes that Plaintiffs agree that "Defendants are correct . . . that punitive damages may not be imposed against the organizational Defendant [I.U.]." (Dkt. 11, at 16.) <u>See</u> <u>Doe v. County of Centre</u>, 242 F.3d 437, 457 (3d Cir. 2001) (ADA); <u>Richardson v. Jones</u>, 551 F.2d 918, 926-28 (3d Cir. 1977) (Title VII); <u>Gagliardo v. Connaught Labortories,</u>

III.    CONCLUSION

For the foregoing reasons, Defendants motion to dismiss will be granted in part, and

denied in part.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

Inc., 311 F.3d 565, 570 n.3 (3d Cir. 2002) (PHRA); Newport v. Fact Concerts, Inc., 453 U.S.
247 (1981) (42 U.S.C. § 1983); Marko v. City of Philadelphia, 576 A.2d 1193 (Pa. Commw. Ct.
1990) (Pennsylvania state law claims).  Thus, Plaintiffs' claims for punitive damages against the
I.U. will be dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUZANNE KERN                               :
                    Plaintiff             :
                                          :
        v.                                :        3:CV-08-1601
                                          :        (JUDGE VANASKIE)
SCHUYLKILL INTERMEDIATE UNIT 29,          :
GERALD ACHENBACH, ED.D.                   :
                    Defendants            :

KAREN THARP                               :
                    Plaintiff             :
                                          :
        v.                                :
                                          :
SCHUYLKILL INTERMEDIATE UNIT 29,          :
GERALD ACHENBACH, ED.D.                   :
                    Defendants            :
                              ORDER

NOW, THIS 15th DAY OF JANUARY, 2010, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1.  Defendants' motions to dismiss (Dkts. 6, 27) are GRANTED IN PART as follows:

    (a) Plaintiffs' Counts VI and VII are DISMISSED in their entirety.

    (b) All punitive damages sought against the I.U. are DISMISSED.

    (c) Plaintiff Tharp's Count I is DISMISSED in its entirety.

    (d) Plaintiff Tharp's Count III claim is DISMISSED to the extent that she may only

    pursue a sexual discrimination claim under the PHRA.

(e) Plaintiff Kern's Count II is DISMISSED as to Defendant Achenbach.

2.  In all other respects, Defendants' motions to dismiss (Dkts. 6, 27) are DENIED.


                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge