IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUSANNE KERN and KAREN THARP, :
              Plaintiffs      : No. 3:08-CV-1601
                                :
          v.                    : (CHIEF JUDGE KANE)
                                : (MAGISTRATE JUDGE PRINCE)
SCHUYKILL I.U. 29 and GERALD    :
ACHENBACH,                  :
              Defendants    :

## REPORT AND RECOMMENDATION

## I. Procedural Background

Pursuant to an Order entered on June 3, 2010 (Doc. 48), the Honorable
Thomas I. Vanaskie[1] referred the Defendants' pending Motion for Summary
Judgment to the undersigned for the purpose of preparing a Report and
Recommendation.

Plaintiffs initiated these actions in the Court of Common Pleas of Schuykill
County by Writs of Summons on June 27, 2008 against Defendants Schuykill
Intermediate Unit ("I.U.") and Gerald Achenbach.  The action was filed pursuant
to, *inter alia*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et
seq*., Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania

---

[1] By Order dated June 10, 2010, this matter was reassigned to the Honorable
Yvette Kane.

Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and 42 U.S.C. § 1983 ("Section 1983").  The matters were subsequently removed to this court on August 26, 2008  (Doc. 1).  Plaintiffs filed amended complaints on October 2, 2008 and October 8, 2008, respectively.  On November 8, 2008, Plaintiff Suzanne Tharp's case (3:08-CV-1602) was consolidated into this action.  (Doc. 13).  Plaintiffs asserted eight claims of relief in connection with their separation from employment with the I.U. asserting *inter alia*, disability discrimination, sexual discrimination and due process violations.

By Order dated January 28, 2010, Judge Vanaskie granted in part and denied in part a Motion to Dismiss filed by Defendants  (Doc. 28).[2]  On February 15, 2010, Defendants filed a Motion for Summary Judgment along with a Statement of Facts and Exhibits (Docs. 31-32), and thereafter filed Supporting Briefs on April 9, 2010 (Docs. 39-40).  Plaintiff filed a Brief in Opposition to the Motion for Summary Judgment on May 17, 2010  (Doc. 44), along with a

---

[2]  The Order dismissed Plaintiffs' claims of defamation (Count VI) and intentional infliction of emotional distress (Count VII); their claim for punitive damages; the claim for disability discrimination (Count I) with respect to Plaintiff Tharp; and Plaintiff Kern's claim under Title VII against Defendant Achenbach. (Doc. 28).

Statement of Facts (Doc. 45)[3] and thereafter submitted their Exhibits on May 24, 2010. (Doc. 46). A Reply Brief was filed by Defendant on May 28, 2010. (Doc. 47). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendants' Motion for Summary Judgment be granted.

## II. Factual Background

Plaintiffs were both employees of Schuykill Intermediate Unit. Kern, a marketing instructor, was hired in 1979 and Tharp, a special education instructor, was hired in 2001. On June 1, 2007, Plaintiffs were playing with fellow employees with water guns in the halls of the school. Subsequently, on June 28,

---

[3] As noted by Defendants, Plaintiffs' Statement of Facts do not comply with the Local Rule 56.1 inasmuch as it fails to respond to the numbered paragraphs of Defendants' Statement of Material Facts, and instead lays out their own set of uncontested facts. This differing submission is not compliant with L.R. 56.1. Consequently, because they "are deemed to be admitted unless controverted by the statement to be served by the opposing party[]," the Defendants' Statement of Facts will be deemed admitted and adopted. M.D. Pa. L.R. 56.1; Barthalow v. David H. Martin Excavating, Inc., No.:1-05-CV-2593, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. July 30, 2007); Levi v. Hogsten, No.: 1:07-CV-1839, 2009 WL 2568179, *5-6 (M.D. Pa. August 18, 2009). *See also* Dusenbery v. U.S., No.: 1-04-CV-2361, 2006 WL 218220, * 1 (M.D. Pa. January 27, 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff see L.R. 56.1 (providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement)"); Griffin v. Lacka. Co. Prison Bd., No.: 3:07-CV-1683, 2008 WL 4533685 (M.D. Pa. October 6, 2008).

2007, Plaintiffs attended a meeting with Defendant Achenbach, the executive

director of the I.U., to discuss the water gun incident. At this meeting,

surveillance camera images of Plaintiffs from June 1 were juxtaposed with those

of the Columbine High School shooters to show similarities.

Plaintiff Kern alleges that she received a letter on July 23, 2007 regarding

the June 1, 2007 incident indicating that she interrupted the school process, set a

bad example for students, created images on the surveillance cameras that could be

misinterpreted as threatening to students or staff and that her actions were

insensitive to the school shooting at Virginia Tech earlier that year. She claims

that she was forced to retire on July 25, 2007 due to exacerbation of her post-

traumatic stress disorder ("PTSD") resulting from her treatment.

Likewise, Plaintiff Tharp received a letter on July 27, 2007 which also

indicated that she was suspended for three (3) days: August 22, August 23 and

August 27. Plaintiff Tharp, citing the alleged mistreatment and discrimination,

contends that she was constructively discharged. However, she indicated that she

voluntarily wrote a letter of resignation and she chose not to remain an employee

of the I.U. because she was going to be opening up a business. (Doc. 31, ¶¶ 48,

49).

Both Plaintiff pursued actions with the Equal Employment Opportunity

4

Commission ("EEOC") and the Pennsylvania Human Relations Commission

("PHRC"), with Plaintiff Kern alleging both disability and gender discrimination

while Plaintiff Tharp alleged only gender discrimination. Although counsel for

Plaintiff subsequently requested right-to–sue letters from the EEOC, no letters

were issued. The present matter followed.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary

judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that

the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law. Anderson, 477

U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).

An issue of material fact is "genuine" if the evidence is such that a reasonable jury

5

could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 257;

<u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>,

927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the

court must view the facts and all reasonable inferences in favor of the nonmoving

party.  <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated</u>

<u>Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse</u>

<u>Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated

allegations of his or her pleadings.  When the party seeking summary judgment

satisfies its burden under Rule 56(c) of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the nonmoving party is required by

Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to

interrogatories or the like in order to demonstrate specific material facts which

give rise to a genuine issue.  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 324

(1986).  The party opposing the motion "must do more than simply show that there

is some metaphysical doubt as to the material facts."  <u>Matsushita Electric</u>

<u>Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts

the burden of production to the nonmoving party, that party must produce

evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. *See* Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## IV. Discussion

As to Plaintiff Kern, Defendants contend in their Motion for Summary that she does not have a disability that is protected by the ADA. Plaintiff Kern concedes there is insufficient evidence to establish her disability claim and she has agreed to withdraw this claim. (See Doc. 44, p. 21). With respect to both Plaintiffs Kern and Tharp, Defendants maintain that the claims brought under Title VII and the PHRA should be dismissed because Plaintiffs did not suffer an adverse employment action, the facts do not give rise to an inference of discrimination, and there is a legitimate non-discriminatory reason for the actions of the Defendants; that Plaintiffs failed state a due process claim inasmuch as they resigned and, moreover, failed to utilize the grievance procedures available to them; that because they resigned and Defendants did not stigmatize them, Plaintiffs' deprivation of liberty claim fails; and that Plaintiffs have failed to establish their claims against Defendant Achenbach for aiding and abetting in

7

discriminatory conduct in violation of the PHRA. Each of these will be addressed

*in seriatim.*

## (A) Title VII and PHRA Claims

Plaintiffs assert gender discrimination in violation of Title VII and the

PHRA. Under Title VII, it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation,
> terms, conditions, or privileges of employment, because of such
> individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000(e)(2). The PHRA likewise prohibits discrimination by

employers on the basis of gender. *See* 43 P.S. § 955.[4]

In the absence of direct evidence of disparate treatment, cases such as

Plaintiffs' are examined under the evidentiary framework first set forth by the

Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas analysis, Plaintiffs must show, by a preponderance

of the evidence, a prima facie case of discrimination. McDonnell Douglas, 411

---

[4] The court will analyze Plaintiffs' Title VII and PHRA claims under the same standards inasmuch as courts generally have interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. Grande v. State Farm Mut. Auto. Ins. Co., 83 F. Supp. 2d 559, 562 (E.D. Pa. 2000).

U.S. at 802. If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee. Id. If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices. Id. at 804. Summary judgment is appropriate on behalf of the employer if the employee fails to meet her burden at either the prima facie or pretext stage of the framework.

*1. Prima Facie Case*

Under Title VII and the PHRA, a prima facie case of gender discrimination is demonstrated by the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job in question; (3) plaintiff suffered an adverse employment action; and (4) circumstances existed that support an inference of discrimination. *See* Geraci v. Moody-Tottrop, Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)); *see* McDonnell Douglas Corp., 411 U.S. at 802. The fourth prong of the prima facie case may be shown by sufficient evidence that non-members of the protected class were treated more favorably. *See* Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

*a. Adverse Employment Action*

The first two elements appear uncontested.[5]  Rather, the parties dispute

whether Plaintiffs suffered "adverse employment actions."  Plaintiffs assert that

"the suspensions of Tharp and Kern constituted adverse action."  (Doc. 44, p. 19).

Defendants maintain that Plaintiff Kern cannot establish this element because she

was not suspended, neither the terms and conditions of her employment nor her

pay was effected and she voluntarily resigned.

Only conduct which "alters the employee's 'compensation, terms,

conditions, or privileges of employment,' deprives him or her of 'employment

opportunities,' or 'adversely affects his or her status as an employee'" is

proscribed by Title VII.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d

Cir. 1997), *overruled in part on other grounds by* Burlington Northern and Santa

Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006) *and by* Burlington Industries, Inc. v.

Ellerth, 524 U.S. 742, 753-54 (1998).  In order for a reprimand to constitute an

adverse employment action, it must effect a material change in the terms or

conditions of plaintiff's employment when accompanied by no other changes in

---

[5]  It is well-settled that Plaintiffs are protected on the basis of their gender. Tomkins v. Public Service Elec. & Gas Co., 568 F.2d 1044 (3d Cir. 1977). Moreover, for purposes of this decisions, the court will assume that Plaintiffs were well-qualified for the positions inasmuch as they held the posts previously and Defendants have not argued otherwise.

employment.  *See* <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 430-431 (3d Cir. 2001) (finding that two written reprimands which remained in plaintiff's file for a six-month period did not effect a material change in the terms or conditions of plaintiff's employment). Written reprimands, such as Plaintiffs received, without further consequence, do not constitute an adverse employment action.  This court has observed:

> In <u>Weston v. Pennsylvania</u>, 251 F.3d 410 (3d Cir. 2001), the Third Circuit found that written reprimands not permanently affixed to an employment file do not constitute an adverse employment action under Title VII.  251 F.3d at 431. In finding that the written reprimands did not alter the plaintiff's employment status in any way, the Third Circuit noted that the plaintiff was "not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location in the prison, did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands." <u>Id</u>.

<u>Santiago v. York City</u>, No.: 1:02-CV-1217, 2005 WL 2347236, *7 (M.D. Pa. September 26, 2005) (Kane, J.) (unpublished opinion).

In the instant case, Plaintiff Kern received a disciplinary notice via mail. Although the notice requested Plaintiff Kern to attend a safety presentation, she was subsequently excused from participation at her own request.  Consequently the court is unable to identify the adverse employment action she alleges to have suffered.  As noted above, the reprimand she received in the mail, without more,

will not constitute an adverse employment action. Consequently, Plaintiff Kern cannot establish this element of a prima facie case of employment discrimination.

With respect to Plaintiff Tharp, she too received a written reprimand via mail. Her reprimand, however, notified her of a three-day suspension without pay. Plaintiff Tharp was subsequently transferred to the adolescent psychological division, a post from which she had previously requested to be transferred. These consequences, she contends, constitute adverse employment actions.

Defendants counter this argument by observing that Plaintiff Tharp's suspension was not based solely on the water gun incident. Rather, as Plaintiff Tharp herself concedes, her suspension was based on her "persistent and willful actions" over a period of time, which included occurrences of unprofessional activity in October, 2006 and May, 2007, for which she received a prior warning that "continued unprofessional actions [would] result in further disciplinary actions." (Doc. , ¶¶ 10, 13, 14, 32). Moreover, her transfer to the adolescent psychological unit was a result of the position she held being eliminated not by the I.U. but by the Schuykill County school districts who intended to teach the class themselves. The transfer is, therefore, unrelated to the water gun incident or her resulting reprimand and cannot, consequently, be considered an adverse employment action under Title VII and the PHRA.

Accordingly, Plaintiffs cannot establish a prima facie case of discrimination because they are unable to show they suffered from an adverse employment action.[6]

### b. Inference of Discrimination

To meet the fourth prong of a prima facie case, a plaintiff must put forth facts to establish that the conditions surrounding her adverse employment action give rise to the inference of discrimination. Adelman v. GMAC Mortg. Corp., No.: 97-691, 1997 WL 805274, *4 (E.D. Pa. December 30, 1997). Although they assert that no disciplinary action was taken against male employees who engaged in water-gun use at school, Plaintiffs did not identify such male employees who used water guns on the June 1, 2007 to Defendants, nor have any such individuals voluntarily come forward. *See* Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006) (stating that a plaintiff establishes the fourth element of a prima

---

[6] Although not directly addressed in the briefs, it should be noted that the Plaintiffs have not put forth evidence to establish circumstances suggesting the effect of their reprimands created a sufficiently hostile work environment to justify their resignations as constrictive discharges. Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004) (plaintiff who advances compound hostile-environment constructive discharge claim, under Title VII, must show working conditions so intolerable that reasonable person would have felt compelled to resign); Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.")

facie case if he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees); <u>Maynard v. Bd. of Regents of Div. of Univs. of Fl. Dep't of Educ.</u>, 342 F.3d 1281, 1289 (11th Cir. 2003) (same).  Defendants note that the images on the surveillance cameras were identified by Dr. Rita Tatusko, the director of vocational education, who did not observe male employees using water guns.  Consequently, the only individuals observed on the surveillance cameras and brought to the attention of Defendants were Plaintiffs and one other female employee, Cynthia Gaval.  Plaintiffs have failed to show that Defendants had knowledge of other male employees engaged in such activity and treated them differently.  Further, Plaintiffs efforts to establish this element of a prima facie case through allegations that Principal Brent Borzak[7] had previously used a water gun in the school are not supported in the record and, as will be discussed, are distinguishable.

The Plaintiffs have failed to put forth any evidence indicating that the circumstances surrounding their reprimands suggest a discriminatory motive or intent on the part of the Defendants.  An inference of discriminations cannot, therefore, be drawn under theses facts.

---

[7] Mr. Borzak has, alternatively, been referenced as the Building Administrator.

*2. Defendant's Legitimate Non-discriminatory Reason*

Having concluded that Plaintiffs have not stated facts sufficient to establish their prima facie cases of discrimination, further analysis through the burden-shifting framework established under <u>McDonnell Douglas</u> to determine whether Defendant's have a legitimate non-discriminatory reason for their actions and whether Plaintiffs can established that the proffered reasons are pretextual is unnecessary. Nonetheless, for the sake of argument the court will examine whether these burdens have been met.

The Defendants have pointed out that I.U. Policy # 417, in effect at the time of the water-gun incident on June 1, 2007, directs that no employee is to have a weapon on school property and, additionally, that employees are not to engage in disruptive practices. (Doc. 32-16). Inasmuch as Plaintiffs have conceded that the water-guns could be misinterpreted as threatening and that their behavior was disruptive and inappropriate, Defendants maintain that their reprimands were proper given their violations of Policy #417. Accordingly, Defendants contend the Policy #417 infractions constitute legitimate, non-discriminatory reasons for the reprimands of Plaintiffs. *See e.g.*, <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 n. 2 (3d Cir. 1997) (noting that the defendant's burden at this stage is relatively light and that it is satisfied if the defendant articulates a legitimate reason for the

adverse employment action).

Moreover, with respect to Plaintiff Tharp, Defendants maintain that her reprimand and suspension were not based exclusively on the June 1, 2007 water gun incident but rather was the result of a culmination of unprofessional conduct on her part. (Doc. 32-4, p. 76). In addition to the violation of Policy #417, Plaintiff Tharp's suspension is based on her previous displays of unprofessional conduct, for which she was warned that further similar behavior would result in disciplinary action. (Doc. 32-8). Taken together, these facts establish a legitimate, non-discriminatory reason for her suspension.

Because the explanation offered by Defendants is gender-neutral, and they have thus satisfied its burden, the dispositive question becomes whether Plaintiffs have presented evidence sufficient to support an inference that the articulated rationale is a pretext for gender discrimination. Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (3d Cir. 1999); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

*3. Plaintiffs' Rebuttal Showing Pretext*

Plaintiffs must next offer evidence "from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action." <u>Showalter</u>, 190 F.3d

at 235; <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir.1997)(en

banc). "To discredit the employer's proffered reason, [] the plaintiff cannot simply

show that the employer's decision was wrong or mistaken. . . . Rather, the

non-moving plaintiff must demonstrate such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable fact finder could rationally find

them 'unworthy of credence.'" <u>Fuentes</u>, 32 F.3d at 765 (citation omitted). The

court must then determine whether the Plaintiffs' evidence is sufficient "to permit

a reasonable fact finder to conclude that the [employer's] reasons are incredible...."

<u>Sheridan v. E.I. DuPont De Nemours & Co.</u>, 100 F.3d 1061, 1072 (3d Cir. 1996).

Because Defendants have come forward with a legitimate

non-discriminatory reason for their actions, Plaintiffs must establish that this

reason was pretextual. They assert that no disciplinary action was taken against

Principal Brent Borzak for similar behavior committed one year prior to the instant

incident. Defendants contend that they had no knowledge of such activity by

Borzak. Assuming the allegation with respect to Borzak were true, any such

activity by Borzak is distinguishable because the surveillance cameras were not in

place and, accordingly, the images generated by the surveillance cameras, which

suggest little difference between real and fake guns, were not an issue at that time of Borzak's alleged water gun activity.

Had she been suspended over the June 1, 2007 water gun incident alone, Plaintiff Tharp may be able to establish the forth prong of a prima facie case of discrimination by establishing an inference of discrimination through the different treatment of other individuals, such as Borzak, for alleged similar activity. However, Plaintiff Kern was also a similarly-situated individual who, although reprimanded, was not suspended. Such circumstances establish that, unlike Kern or Borzak, Plaintiff Tharp's suspension had its basis in the cumulative nature of the transgressions by Tharp. Plaintiff Tharp conceded that the disciplinary measures were not for the water gun incident alone but for three (3) separate incidents. (Doc. 32-4, p. 76). While no one received the disciplinary action she did, no one is alleged to have used water guns in the same situation as she, *i.e.* with a history of citations for unprofessional conduct and a prior warning for such behavior. In such instances, an inference of discrimination cannot be established where other individuals may appear to be treated more favorably for similar conduct but, in fact, are not truly similarly-situated to Plaintiff.

Concluding that the circumstances not only of Borzak's alleged similar misbehavior but also that of Kern are distinguishable in that they had no prior

references of unprofessional conduct similar to Plaintiff Tharp, the court finds that Plaintiffs' attempts to rebut the proffered legitimate, non-discriminatory reasoning by alleging that a similarly-behaving male employee received no reprimand have not been sufficiently stated to carry their burden.  Consequently, they have not offered evidence to establish the proffered legitimate non-discriminatory reason offered by Defendants–that Plaintiffs had violated Policy #417–is not credible. Accordingly, Plaintiffs cannot demonstrate that the legitimate non-discriminatory reasons offered by Defendants for their reprimands of Plaintiffs are pretextual.

## (B) Due Process Claims

Defendants next assert that Plaintiffs' due process claims should be dismissed inasmuch as they voluntarily resigned from their positions and did not avail themselves of the grievance procedures available to them under the Collective Bargaining Agreement ("CBA").  As noted by Defendants in their Reply Brief, Plaintiffs did not address the due process arguments in their Brief in Opposition to the Motion for Summary Judgment.  Consequently, the Motion is deemed unopposed with respect to Plaintiffs' due process claims brought under § 1983.  *See* M.D. Pa. L.R. 7.6.  It is recommended, therefore, that the Motion for Summary Judgment be granted as to Counts IV in the respective complaints.

*(C) Deprivation of Liberty Claims*

Plaintiffs' complaints assert they were deprived of the liberty interest in their employment through the stigmatization of their reputations in violation of § 1983. Specifically, they claim that "false and outrageous accusations against [them] were disseminated publicly in such a fashion as to lead [their] co-workers and other members of the community to believe that [Plaintiffs] ha[ve] in some way been involved in some sort of terrorist incident[]" and, as a result, they have "been disadvantaged in obtaining other suitable employment[.]" (Doc. 5, ¶¶ 76-77; 3:08-CV-1602, Doc. 5, ¶¶ 71-72).

On this issue, the Supreme Court has observed:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

Paul v. Davis, 424 U.S. 693, 701 (1976). Only employment actions that are "(1) based on a 'charge against [the individual] that might seriously damage his standing and associations in the community ...' or (2) 'impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities[]'" implicate the Fourteenth Amendment. Robb v. City

of Philadelphia, 733 F.2d. 286, 293 (3d Cir. 1984) (quoting Board of Regent of

State College v. Roth, 408 U.S. 564, 573 (1972)).  Moreover, a plaintiff must

demonstrate "that the allegedly stigmatizing information was 'published' or

otherwise disseminated by his . . .  employer to the public."  Chantel v. Reagan,

841 F.2d 1216, 1223 (3d Cir. 1988) (citing Bishop v. Wood, 426 U.S. 341, 348

(1976).  "[A] plaintiff must show a stigma to his reputation plus deprivation of

some additional right or interest" in order to make out a due process claim for

deprivation of a liberty interest in reputation.  Hill v. Borough of Kutztown, 455

F.3d 225, 236 (3d Cir. 2006) (citing id.).  This "stigma-plus" test has been applied

to mean that an employee is deprived of a protected liberty interest when an

employer "creates and disseminates a false and defamatory impression about the

employee in connection with his termination[.]"  Id.  (quoting Codd v. Velger,

429 U.S. 624, 628 (1977)).

"The creation and dissemination of a false and defamatory impression is the

'stigma,' and the termination is the 'plus.'"  Id.  "To satisfy the "stigma" prong of

the test, it must be alleged that the purportedly stigmatizing statement(s)(1) were

made publicly, and (2) were false."  Id. (citing Codd, supra 627-629 (internal

citations omitted)).  Although there is a question of whether the termination from

public employment constitutes a sufficient "plus" when the plaintiff lacked a

property interest in retaining his job, it has been held that a that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." Id. at 238.

In the present case, Plaintiffs allege the juxtaposition of the surveillance camera photos of them carrying water guns on June 1, 2007 with images of the Columbine shooters had a stigmatizing effect on their reputations. However, as stated above, in order to state a valid deprivation of liberty interest claim, Plaintiffs must show first that the alleged stigmatizing statements by the Defendants were disseminated to the public and that such statements were false. Plaintiffs have produced no evidence that such statements were disseminated to the public, and they admitted that they know no other individuals, not in attendance at the meetings, who were shown the surveillance photo presentation. (Doc. 31, ¶¶ 28, 69).

Additionally, Plaintiffs have not alleged that such statements are untrue.[8] In fact, both Plaintiffs Kern and Tharp acknowledged the similarities in the June 1,

---

[8] It should be noted that Defendants did not state that Plaintiffs themselves or their actions were similar to those of the Columbine shooters. Rather, Defendants only compared surveillance camera images of the two events to demonstrate how the water gun incident could be subject to misinterpretation and be viewed as a threat to the safety and security of the I.U. environment.

2007 surveillance photos to images of the Columbine shooters. (Doc. 31, ¶¶ 27, 27, 29, 36, 61, 78). While a comparison of the June 1, 2007 surveillance camera images to similar depictions of the Columbine shooters seems grave, Plaintiffs have acknowledged that the Defendants did not indicate they were killers or had the capacity of the Columbine shooters. (Id. at ¶¶ 52, 78). Rather, the similarities of the visual images were observed to demonstrate the propensity for misinterpretation of Plaintiffs' actions, which Plaintiffs themselves conceded. (Doc. 31, ¶¶ 36, 61). Accordingly, Plaintiffs have not alleged, nor does it appear evident, that the alleged stigmatizing statements were false.

Moreover, even if they could satisfy the "stigma" prong of the analysis, Plaintiffs cannot establish the "plus" element–termination–inasmuch as the court has previously determined that their departure from employment at the I.U was not due to termination or constructive discharge but rather based on their voluntary resignations. Plaintiffs have, accordingly, failed to meet the "stigma-plus" test to state a Fourteenth Amendment claim. Consequently, it is recommended that Count V be dismissed.

### *(D) Aiding and Abetting Claims against Defendant Achenbach*

In their complaints, Plaintiffs assert that Defendant Achenbach violated this provision of the PHRA by aiding and abetting in the alleged discriminatory

actions taken against the Plaintiffs.  Defendants maintain that Plaintiffs have no

valid claim against the I.U. and, therefore, Defendant Achenbach cannot be in

violation of § 955(e) in the absence of a corresponding violation by the employer.

The PHRA states that it is prohibited that:

> any person, employer, employment agency, labor organization or
> employee, to aid, abet, incite, compel or coerce the doing of any act
> declared by this section to be an unlawful discriminatory practice, or
> to obstruct or prevent any person from complying with the provisions
> of this act or any order issued thereunder, or to attempt, directly or
> indirectly, to commit any act declared by this section to be an
> unlawful discriminatory practice.

43 P.S. § 955(e).  While § 955(e) extends liability to any individual who aids and

abets in alleged discrimination, "only supervisory employees ... can be held liable

under § 955(e)," based on the theory that only supervisory employees can share

the intent and purpose with the employer to engage in discriminatory conduct.

Carlton v. City of Philadelphia, No. Civ.A. 03-1620, 2004 WL 633279, *8 (E.D.

Pa. March 30, 2004).  If a defendant "knew or should have known that the

[p]laintiff was being subjected to . . . harassment . . . [and] he repeatedly refused to

take prompt action to end the harassment directed at Plaintiff[], . . . [s]uch conduct,

if proven, would constitute aiding and abetting." Dici v. Commonwealth of

Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996).  However, in the absence of

evidence that a defendant's employment decision was motivated by gender

24

discrimination, a claim under the PHRA must fail.  *See* <u>Milby v. Greater</u>

<u>Philadelphia Health Action</u>, No.: 06-4556, 2008 WL 2278143, *5 (E.D. Pa. June

3, 2008) (concluding that because the court found that plaintiff had failed to

adduce competent evidence of discriminated against her by the employer, her

claims against the individual defendants are without merit); <u>Reganick v.</u>

<u>Southwestern Veterans' Center</u>, No.: 06-1267, 2008 WL 768423, *8 (W.D. Pa.

March 20, 2008) (plaintiff's section 955(e) claim against the individual defendants

failed because her discrimination and retaliation claims fail and thus there was no

discrimination or retaliation for the individual defendants to aid and abet); <u>Stepp</u>

<u>v. Fairpoint Communications, Inc.</u>, No.: 06-576, 2007 WL 4248559, *9 (W.D. Pa.

November 30, 2007) (finding that because employer's conduct was not

discriminatory or retaliatory under the ADEA or PHRA, there was no

discrimination or retaliation for individual defendant to aid and abet); <u>Kaniuka v.</u>

<u>Good Shepherd Home</u>, 2006 WL 2380387, at *10 (E.D. Pa. Aug.15, 2006)

(holding that "[i]ndividual defendants cannot violate PHRA section 955(e) when

there is no corresponding section 955(a) violation by an employer to aid and

abet"); <u>Taylor v. Rodale, Inc.</u>, 2004 WL 1196145, at *4 (E.D. Pa. May 27, 2004)

(dismissing the section 955(e) claim against the individual defendant because

there was no basis for relief against the employer).

Having determined that Plaintiffs have failed to produce sufficient evidence to establish a cause of action under the PHRA, however, a claim of aiding ad abetting under § 955(e), which has as a prerequisite an underlying PHRA violation, cannot be stated. Consequently, it is recommended that the Motion for Summary Judgment be granted with respect to Count VIII.

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 30) be granted.

Date: June 23, 2010       s/ William T. Prince
                William T. Prince
                United States Magistrate Judge